UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO ONATE, JR., on behalf of himself and all others similarly situated,<br><br>                           Plaintiff,<br><br>        v.<br><br>AHRC HEALTH CARE, INC. and CARE DESIGN NY, LLC,<br><br>                           Defendants. | Case No.: 20-cv-08292<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Antonio Onate Jr. ("Plaintiff"), on behalf of himself and all other similarly situated persons, by and through his undersigned counsel, alleges upon personal knowledge as to himself and upon information and belief as to other matters (which is based on, among other things, their experiences at Defendants' facility, review of Defendants' records, conversations with Defendants' Hourly Employees and investigation of his counsel), as follows:

## NATURE OF ACTION

1.      Plaintiff brings this action on behalf of himself and all other similarly situated current and former hourly paid and non-exempt employees ("Hourly Employees") of AHRC Health Care, Inc. ("AHRC") and Care Design NY, LLC ("Care Design").  The Defendants in the action are: (i) AHRC; and (ii); AHRC's related entity, Care Design (together with AHRC, collectively as, "Defendants") which, by virtue of their management and control over the wages and work of their Hourly Employees, are classified as "employers" under applicable labor law.

2.      Defendants provide services to persons with intellectual and developmental disabilities, including Medicare and Medicaid services, throughout the State of New York.  Defendants' organization is comprised of three departments: the Program Departments (which

includes the following nine sub-departments: Educational Services, Adult Day Services, Camping & Recreational Services, Service Coordination, Employment & Business Services, Residential Services, In-Home Services, Family & Clinical Services, an Individual Services & Supports); the Administrative Departments (which includes the following six sub-departments: Administrative & General Services, Real Property, Information Technology, Organizational & Employee Development, Public Information/Referral and Information Center/Program Record Unit, and Compliance and Quality Insurance); and a Finance Department.  In total, Defendants employ approximately 2,500 Hourly Employees throughout New York State.

3.      As particularized below, Defendants have engaged in illegal and improper wage practices that have deprived Hourly Employees of millions of dollars in wages and overtime compensation.   These practices include: (a) improperly penalizing Hourly Employees by configuring the time clocks in Defendants' facilities to round down and artificially reduce the amount of time Hourly Employees are credited with performing work as well as compensating Hourly Employees based only upon their scheduled hours rather than the actual time they clocked in and out; and (b) automatically deducting time for meal breaks when employees are performing work during that time.

4.      Furthermore, Defendants failed to provide Hourly Employees with appropriate pay rate acknowledgement forms and weekly wage statements.

5.      These illegal practices and policies are uniform throughout Defendants' facilities and have been known to Defendants for years.

6.      For these reasons, Plaintiff brings this action on behalf of himself and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et. seq.,* and

under McKinney's Labor Law (the "NYLL"), §§ 190, *et. seq.,* 195(1), 195(3), §§ 650, *et seq.,* and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

8.      This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class members exceed $5,000,000.00 in the aggregate.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

**Plaintiff**

11.     Plaintiff, Antonio Onate Jr., is currently a resident of Summit, New Jersey and is a former employee of Defendants.  Mr. Onate was employed by Defendants at their Bronx, New York location on a full-time basis from January 27, 2014 through November 6, 2019.  Mr. Onate was employed as an Hourly Employee and paid an hourly rate of $25.

12.     Mr. Onate was originally hired by AHCR on January 27, 2014 as a Medicaid Services Coordinator, but was transitioned to Care Design on or about July 1, 2018.  As part of the

transition from AHCR to Care Design, Mr. Onate's title was changed from Medicaid Services Coordinator to Care Manager, but his roles, responsibilities, duties, accounts, hourly rate, supervisors, and work schedule all remained the same.

13.     Throughout his employment, Mr. Onate was scheduled to work from 9:00 a.m. until 5:00 p.m., 5 days per week.  His job duties included, among other tasks, providing Medicare services to persons with intellectual and developmental disabilities and coordinating the healthcare and long-term support service needs of such persons.

14.     As a Medicare Services Coordinator and a Care Manager, Mr. Onate could not exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he works.  Mr. Onate could not hire or fire other Hourly Employees.  Mr. Onate also could not pick and choose a particular job assignment during any given day, but rather was assigned particular job assignments by his supervisors.  Despite this lack of independent discretion, throughout the entirety of his employment with Defendants, Mr. Onate was not properly compensated for all hours worked.

15.     Specifically, throughout Mr. Onate's employment, he was asked to and did perform essential work in between when he clocked in and the beginning of his scheduled shift, as well as in between the end of his scheduled shift and when he clocked out.  By way of example, nearly every day throughout the course of his employment, Mr. Onate clocked in between 10 to 30 minutes prior to the start of his scheduled shift and immediately began performing job-related duties, but his time was rounded and he was compensated as if he began work at 9:00 a.m. Additionally, on those same occasions, Mr. Onate would typically clock out between 10 to 15 minutes after the end of his scheduled shift and would perform work during this post-shift interval. However, his time was rounded and he was compensated as if he clocked out at 5:00 p.m.  On

these days, Mr. Onate worked but was not compensated for at least 20-45 minutes because of Defendants' improper schedule-based time rounding procedures.  Often times, Mr. Onate would clock in or out significantly earlier or later than 10-15 minutes, including some days in which he would clock in/out 30-45 minutes before or after the start or end of his scheduled shift and perform work during these pre- and post-shit unpaid intervals.

16.      Mr. Onate was engaged in essential and integral work on Defendants' behalf during these and all other pre- and post-shift schedule-based time rounding periods in which he was clocked in but not compensated.  Work performed during the pre- and post-shift schedule-based rounding periods include some or all the job duties referenced *supra*.  This pre- and post-shift work was significant, integral and indispensable to the performance of job-related duties, was not a *de minimis* task or request and was predominantly for the Defendants' benefit. This pre/post shift work occurred 4-5 times per week for anywhere between 20-45 minutes per day or more.

17.      Furthermore, Mr. Onate would routinely be interrupted during his uncompensated meals breaks and be required to perform work before the expiration of his full-30-minute meal break.  Work performed during interrupted and uncompensated meal breaks includes those duties described *supra*.

18.      By way of example, during the pay period of May 12, 2018 to May 31, 2018, Mr. Onate clocked in/out approximately 15-30 minutes early or late each day that he worked and had his uncompensated meal break interrupted by approximately 5-10 minutes per day. Despite working a 9:00am to 5:00pm shift 5-days per week, Mr. Onate was only paid for 70 hours over the course of this 2-week pay period and was not paid any overtime.  However, during this 2-week period, Mr. Onate actually worked between 78.33 hours and 81.16 hours and was not paid any additional straight or overtime for these additional 3.33 – 6.16 hours of overtime during that 2-

week period. Moreover, Defendants failed to track or compensate Mr. Onate's hours during single week periods to properly asses and determine if he worked overtime during any specific week.

19.    Additionally, Mr. Onate's supervisors knew he was performing work during periods of improper pre- and post-shift time rounding and during uncompensated meal breaks but did nothing to rectify the situation or compensate Mr. Onate for his time.  Supervisors with knowledge of Mr. Onate' uncompensated work include but are not limited to: (1) Jennifer Mild; and (2) Karen Guarente.

20.    Thus, because of Defendants' improper time-rounding, meal break and overtime compensation policies and as described more fully below, Mr. Onate was deprived of wages as required by the FLSA and NYLL, including at least 1-3 hours of uncompensated overtime per week.

21.    Finally, Defendants never provided Mr. Onate with proper pay rate acknowledgement forms at the commencement of his employment and when he received a change in his hourly rate of pay as required under NYLL §195(1), nor was he provided with appropriate weekly wage statements as required by NYLL §195(3).

**Defendants**

22.    AHRC is an entity conducting business in the Southern District of New York who is engaged in commerce and whose commercial activities generate at least $500,000 a year.

23.    AHRC was established and incorporated under the laws of New York, with its principal executive office located in New York, New York.

24.    AHCR provides services to persons with intellectual and developmental disabilities, including Medicare and Medicaid services, throughout the State of New York.

25.    Care Design provides similar services to persons with intellectual and developmental disabilities.

26.     According to AHCR's website, in or around June 2018, AHCR transitioned "more than 2,500 people supported and 70 staff to Care Design New York . . . ."

27.     AHCR and Care Design are related organizations through, among other things, common membership, governing bodies, trustees and/or officers and benefit plans.  Defendants also share common management and have common ownership.

28.     The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  As such, Defendants had the power to control wage policies and practices through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control record-keeping practices. Thus, Defendants are the joint employers of Plaintiff and class members within the meaning of the FLSA and NYLL.

## FACTUAL ALLEGATIONS

### Background

29.     Defendants employ over 2,500 current Hourly Employees.  Each Hourly Employee is assigned to a specific department and location throughout the State of New York.  Such departments include Defendants' Program Departments, Administrative Departments, and Finance Department.

30.     Defendants hired Plaintiff and all other Hourly Employees and promised to pay hourly wages for their work.  Full-time Hourly Employees are paid hourly wages based upon their job description and tenure that range between minimum wage and approximately $25.00 per hour and have a standard work week of 40 hours.

31.     Hourly Employees are required to clock in when they arrive at work and clock out when they leave for the day.  The time-keeping system and the procedures for using it are the same in each department.

**Defendants' Time-Keeping System Is Configured to Improperly
Penalize Hourly Employees When They Have Clocked In Before
The Beginning Of Their Shift Or After The End Of Their Shift**

32.     Defendants have a policy and practice of unlawfully penalizing Hourly Employees who clock-in and perform work before their shifts are scheduled to begin and perform work after the end of their scheduled shift before they clock-out.  Defendants will automatically penalize an Hourly Employee by rounding their clock in time to the beginning or end of their scheduled shift start time, even though they are performing job-related duties between when they have actually clocked in/out and when they are scheduled to work.  These job-related duties are performed at the request of Managers, Supervisors, Directors and other superiors who know that Hourly Employees will not be paid for this time and instruct Hourly Employees to begin or complete tasks within the unpaid schedule-based rounding window.

33.     For example, if an Hourly Employee is scheduled to end his shift at 5:00 p.m., and he clocks out at 5:10 p.m., he is paid only until 5:00 p.m. even though he is performing work related duties during that uncompensated 10-minute interval.  Similarly, if an Hourly Employee is scheduled to start his shift at 8:00 a.m. and he clocks in at 7:50 a.m., he is paid starting at 8:00 a.m. even though he is performing work-related duties during that uncompensated 10-minute interval.  Consequently, if an Hourly Employee is scheduled to begin his shift at 8:00 a.m. and he clocks in at 8:04 a.m., he is not given the benefit of being compensated from 8:00 a.m. but rather he is paid from 8:04 a.m. forward.  Similarly, if an Hourly Employee is scheduled to end his shift at 5:00 p.m. and he clocks out at 4:55 p.m., he is not given the benefit of being compensated until 5:00 p.m. but rather he is paid only up until he clocks out at 4:55 p.m.

34.     Although they request and are aware of the work Hourly Employees perform during these penalty periods, Defendants have knowingly configured their time keeping system to deny compensating Hourly Employees for some – if not all – of this unlawful schedule-based rounding

time spent on the Defendants' behalf by systematically rounding down the Hourly Employees' total time worked.

35.    "Rounding" practices are permissible under the FLSA and NYLL if the "arrangement averages out so that the Hourly Employees are fully compensated for all the time they actually work." 29 C.F.R. § 785.48(b).  This practice is accepted provided that the time rounding is used in such a manner that will not, over a period of time, result in the failure to compensate Hourly Employees properly for all the time they have actually worked.  Defendants are aware of permissible rounding practices under the FLSA and NYLL.  However, despite their knowledge of permissible rounding practices and knowing that its time keeping software works only to the benefit of the Defendants and to the detriment of the Hourly Employees, the Defendants have never conducted an analysis to determine whether the Defendants' time clock system averages out – which it does not.  As such, Defendants' schedule-based rounding practice unfairly favors Defendants versus the Hourly Employees subject to the schedule-based rounding policy. This rounding policy consistently and artificially reduces the total time Hourly Employees are credited with working at Defendants facilities.

36.    Accordingly, Plaintiff Antonio Onate Jr., seeks certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective Class) or six years (New York Class) preceding the filing of this action and were improperly penalized by Defendants' schedule-based time rounding system if they clocked in or out before and/or after the end of their scheduled shift, even though they performed work related duties during this uncompensated time window and who were: (a) not compensated for all work performed while clocked-in; and/or (b) were not compensated for all work performed during uncompensated and automatically deducted meal breaks; and/or (c) were not fully compensated for time worked over forty hours per week at overtime rates.

**Defendants Exercise Control Over AHCR's and Care Design's Wage Policies and Practices**

37.     Defendants have the power to control AHCR's and Care Design's wage policies and practices through their oversight and management of day-to-day operating procedures, control over employee work schedules, ability to determine employees' rate of pay and ability to control Defendants' record and time keeping practices.

38.     By virtue of their positions, roles and conduct as described above, AHCR and Care Design are "employers" under the FLSA and NYLL.

**Defendants Failed To Provide Hourly Employees With Timely
And Appropriate Wage Statements and Pay Rate
Acknowledgement Forms As Required Under NYLL**

39.     Defendants failed to provide Plaintiff and all other Hourly Employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

40.     Defendants failed to provide Plaintiff and all other Hourly Employees at the time of hiring and when they received a change in their hourly rate of pay, a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid  by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the

employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

## FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

41.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

42.     Plaintiff brings this FLSA collective action on behalf of himself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective Class.

43.     Excluded from the FLSA Collective Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in AHCR and Care Design.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective Class.

44.     Plaintiff is unable to state the exact number of Hourly Employees within the Collective Class without discovery of Defendants' books and records but estimates that the FLSA Collective Class exceeds 2,500 individuals.

45.     Defendants improperly benefited from Plaintiff and the FLSA Collective Class members' uncompensated work during schedule-based rounding periods and uncompensated meal breaks.

46.     Defendants' unlawful conduct has been widespread, repeated and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiff and the FLSA Collective Class.

47.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective Class, and, as such, notice should be sent to the FLSA Collective Class. There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised

notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

48.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

49.     Plaintiff brings this action on his own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

50.     Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in AHCR and Care Design.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

51.     Defendants employ over 2,500 Hourly Employees in New York State and they systematically fail and refuse to pay their Hourly Employees for all compensable hours worked. The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

52.     Plaintiff's claims are typical of the claims of other New York Class members because Plaintiff is a non-exempt hourly-wage Hourly Employee who has not been compensated for work performed at the employer's request once he had clocked-in before his scheduled shift and before he clocked-out after his scheduled shift or for his work performed during uncompensated meal breaks.  Plaintiff and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

53.     Plaintiff will fairly and adequately protect the interests of the New York Class.

Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

54.     Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a)     Whether Defendants failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendants while clocked-in;

(b)     Whether Defendants failed and/or refused to pay Plaintiff appropriate overtime rates for shifts in which they worked during uncompensated and automatically deducted meal breaks;

(b)     Whether Defendants failed to keep true and accurate time records for all hours worked by their Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

(c)     Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

(d)     Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

(e)     Whether Defendants correctly compensated members of the New York Class for all uncompensated straight time hours worked under forty per workweek;

(f)     Whether Defendants failed to comply with the posting and notice

requirements of the NYLL;

(g)     Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendants' benefit which was not compensated;

(H)     Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(i)     The nature and extent of class-wide injury and the measure of damages for those injuries.

55.     Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the New York Class are readily identifiable from Defendants' own records.

56.     Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

57.     Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

58.     Plaintiff intend to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

### FIRST CAUSE OF ACTION

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(On Behalf of Plaintiff and the FLSA Collective Class)**

59.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

60.     At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.

61.     At all relevant times, Defendants have engaged in commerce and their commercial activities generate at least $500,000 a year.

62.     At all relevant times, Defendants have employed and continue to employ, Hourly Employees, including Plaintiff and each of the members of the FLSA Collective Class.

63.     Plaintiff consents in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit A is a copy of Plaintiff's Opt-in forms.  As this case proceeds, it is likely that other individuals will sign consent forms and join as Plaintiff and opt-ins.

64.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

65.     Plaintiff and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

66.     Defendants, pursuant to their policies and practices, failed and refused to pay

minimum wage and overtime premiums to Plaintiff and the members of the FLSA Collective Class for all of their hours worked.

67.      By failing to compensate Plaintiff and the members of the FLSA Collective Class for minimum wage and overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq.*

68.      By improperly rounding FLSA Collective time entries, Defendants have violated, and continue to violate Department of Labor Regulation 29 C.F.R. § 785.48(b).

69.      The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

70.      Plaintiff, on behalf of himself and members of the FLSA Collective Class, seeks damages in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

71.      Plaintiff, on behalf of himself and the FLSA Collective Class, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

### SECOND CAUSE OF ACTION

**Violations of New York Labor Law – Nonpayment of Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiff and the New York Class)**

72.      The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

73.      Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

74.      Defendants were not and are not permitted by state or federal law, or by order of a

court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class wages that concern this lawsuit.

75.     Defendants were not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

76.     Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

77.     Defendants have violated the New York Labor Law by failing to pay Plaintiff and the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

78.     Plaintiff, on behalf of himself and the New York Class, seeks the amount of underpayments based on Defendants failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

79.     Plaintiff, on behalf of herself and the New York Class, seeks all liquidated and punitive damages and penalties available under the NYLL.

### **THIRD CAUSE OF ACTION**

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff and the New York Class)**

80.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

81.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiff and the

members of the New York Class.

82.      Defendants have failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

83.      By Defendants' knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

84.      Due to Defendants' violations of the NYLL, Plaintiff and the members of the New York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

85.      Plaintiff, on behalf of himself and the New York Class seeks all liquidated and punitive damages and penalties available under the NYLL.

## **FOURTH CAUSE OF ACTION**

### **New York Labor Law – Violation of the Notice and Recordkeeping Requirements (On Behalf of Plaintiff and the New York Class)**

86.      The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

87.      Defendants have failed to provide Plaintiff and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a

mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

88.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

### New York Labor Law – Violation of the Wage Statement Provisions
### (On Behalf of Plaintiff and the New York Class)

89.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

90.     Defendants have not provided Plaintiff and all Hourly Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195(3).

91.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Antonio Onate Jr., individually and on behalf of the FLSA Collective, seeks the following relief:

A.     Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all

similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of Plaintiff, Antonio Onate Jr., as the Representative of FLSA Collective Class;

C.      Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective Class;

D.      An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendants;

E.      An award of costs incurred herein, including expert fees;

F.      An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.      An award of pre-judgment and post judgment interest, as provided by law;

H.      An award of injunctive relief to prevent against future wage and hour violations; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff, Antonio Onate Jr., individually and on behalf of the New York Class, seek the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff's counsel as Lead Counsel for the New York Class;

B.      Designation of Plaintiff, Antonio Onate Jr., as the Representative of New York Class;

C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

1.      An award to Plaintiff and members of the New York Class of damages for the amount of unpaid straight wages in addition to interest subject to proof;

2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D.      On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

1.      An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

E.      On the Fourth and Fifth Causes of Action (Violation of New York Labor Law – Notice and Recordkeeping Requirements and Wage Statement Provisions):

1.      An award to Plaintiff and members of the New York Classes of damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d).

2.      An award to Plaintiff and the members of the New York Classes of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff and Plaintiff's employment, to Plaintiff's causes of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage,

closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

### NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiff, the FLSA Collective Class and the New York Class intends to charge and hold personally, jointly and severally liable, the ten largest shareholders of AHCR and Care Design, for all debts, wages, and/or salaries due and owing to Defendants' employees for services performed by them and Plaintiff has expressly authorized the undersigned, as his attorney, to make this demand on his behalf.

Dated: New York, New York
      October 5, 2020

*/s/ Lee S. Shalov*
Lee S. Shalov
Brett R. Gallaway
Jason S. Giaimo
McLAUGHLIN & STERN, LLP
260 Madison Ave.
New York, NY 10016
Telephone: (212) 448-1100
lshalov@mclaughlinstern.com
bgallaway@mclaughlin.com
jgiaimo@mclaughlinstern.com

*Attorneys for Plaintiff, the FLSA Collective Class
and the New York Class*