UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO ONATE, JR., on behalf of himself and all others similarly situated, | Case No.: 1:20-cv-08292-AS-JW |
| Plaintiff, | |
| v. | |
| AHRC HEALTH CARE, INC., | |
| Defendant. | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION
FOR ATTORNEYS' FEES, EXPENSES, AND SERVICE AWARD**

Jason S. Giaimo
Lee S. Shalov
Brett R. Gallaway
McLAUGHLIN & STERN, LLP
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
jgiaimo@mclaughlinstern.com
lshalov@mclaughlinstern.com
bgallaway@mclaughlinstern.com

*Class Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT..........................................................................................1

ARGUMENT .................................................................................................................3

I.    THE REQUESTED FEE OF ONE-THIRD OF THE GROSS SETTLEMENT AMOUNT IS REASONABLE AND SUPPORTED BY APPLICABLE AUTHORITY ...........................3

    A.    The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit ...........................................................4

    B.    The *Goldberger* Factors Support an Award of One-Third of the Gross Settlement Fund ............................................................................................................5

        1.    Class Counsel's Time and Labor...............................................................6

        2.    Magnitude and Complexity of the Litigation............................................8

        3.    Risk of Litigation .....................................................................................9

        4.    Quality of Representation ........................................................................11

        5.    Fee in Relation to Settlement...................................................................13

        6.    Public Policy Considerations ...................................................................14

    C.    The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Gross Settlement Amount ......................................................................15

II.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES ...................................................................................17

III.    THE REQUESTED SERVICE AWARD IS FAIR AND REASONABLE......................20

CONCLUSION.............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adell v. City of New York*,
  2015 U.S. Dist. LEXIS 25510 (S.D.N.Y. Mar. 2, 2015) ......................................................... 17

*Alvarez v. Fine Craftsman Grp., LLC*,
  2024 U.S. Dist. LEXIS 143079 (S.D.N.Y. Aug. 6, 2024) (Willis, M.J.) .................................. 16

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*,
  522 F.3d 182 (2d Cir. 2008) ...................................................................................................... 4

*Asare v. Change Group N.Y., Inc.*,
  2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) .......................................................................... 17

*Assif v. Titleserv, Inc.*,
  2015 U.S. Dist. LEXIS 198200 (E.D.N.Y. Aug. 14, 2015) ...................................................... 17

*Azogue v. 16 for 8 Hosp. LLC*,
  2016 WL 4411422 (S.D.N.Y. 2016).......................................................................................... 13

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
  450 U.S. 728 (1981).................................................................................................................... 8

*Beckman v. KeyBank, N.A.*,
  293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................................... 8, 15

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
  2015 U.S. Dist. LEXIS 90117 (S.D.N.Y. July 9, 2015) ........................................................... 13

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
  2010 U.S. Dist. LEXIS 79679  (S.D.N.Y. Aug. 6, 2010).......................................................... 7

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ...................................................................................................... 9

*Civil v. Starrett City, et al.*,
  18-cv-2256, Dkt. No. 63 (E.D.N.Y. Sept. 27, 2019)........................................................... 12, 16

*Clark v. Ecolab, Inc.*,
  2010 U.S. Dist. LEXIS 47036 (S.D.N.Y. May 11, 2010) ......................................................... 14

*D'Angelo v. Hunter Bus Sch., Inc.*,
  2023 U.S. Dist. LEXIS 131029 (E.D.N.Y. July 28, 2023) ....................................................... 16

*Deposit Guar. Nat'l Bank v. Roper*,
  2012 U.S. Dist. LEXIS 110300 (1980)................................................................................. 3, 14

*Dial Corp. v. News Corp.*,
  317 F.R.D. 426 (S.D.N.Y. 2016) .............................................................................................. 19

i

*EVCI Career Colleges Holding Corp. Sec. Litig.*,
   2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007)..............................................4

*Felix v. St. Catherine of Siena Medical Center, et al.*,
   2:21-cv-03220 (NJC)(SIL) (E.D.N.Y.) .....................................................................12

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005)...................................................................14, 20

*Frlekin v. Apple, Inc.*,
   13-cv-3451 (N.D. Cal.) ...............................................................................................12

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
   2012 U.S. Dist. LEXIS 144446 (E.D.N.Y. Oct. 4, 2012) ........................................14

*Gilliam v. Addicts Rehab. Ctr. Fund*,
   2008 U.S. Dist. LEXIS 23016 (S.D.N.Y. Mar. 24, 2008)........................................13

*Goldberger v. Integrated Res. Inc.*,
   209 F.3d 43 (2d Cir. 2000) ................................................................................passim

*Griffin v. Endicott Coil Company, Inc.*,
   3:22-cv-01128-MAD-ML (N.D.N.Y.) ...............................................................12, 16

*Guippone v. BH S&B Holdings, LLC*,
   2011 U.S. Dist. LEXIS 126026 (S.D.N.Y. Oct. 28, 2011).......................................20

*Hanifin v. Accurate Inventory and Calculating Service, Inc.*,
   2014 U.S. Dist. LEXIS 115710 (N.D.N.Y. Aug. 20, 2014) .......................................7

*Hernandez v. Immortal Rise, Inc.*,
   306 F.R.D. 91 (E.D.N.Y. 2015)................................................................................20

*Hicks v. Stanley*,
   2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005)........................................15

*In re Boesky Sec. Litig.*,
   888 F. Supp. 551 (S.D.N.Y. 1995) ...........................................................................15

*In re Gilat Satellite Networks, Ltd.*,
   2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sept. 18, 2007) ......................................13

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   302 F. Supp. 2d 180 (S.D.N.Y. 2003) ......................................................................17

*In re Sumitomo Copper Litig.*,
   74 F. Supp. 2d 393 (S.D.N.Y. 1999) .....................................................................4, 14

*J.I. Case Co. v. Borak*,
   377 U.S. 426 (1964).................................................................................................14

*Jian Xin Zhang v. Great Sichuan on 3rd Ave. Inc.*,
  2025 U.S. Dist. LEXIS 22793 (S.D.N.Y. Feb. 7, 2025) ........................................ 17

*Johnson v. Brennan*,
  2011 U.S. Dist. LEXIS 105775 (S.D.N.Y. Sept. 16, 2011) .................................... 8

*Karpus v. Borelli (In re Interpublic Sec. Litig.)*,
  2004 U.S. Dis. LEXIS 21429 (S.D.N.Y. Oct. 26, 2004)........................................ 5

*Khait v. Whirlpool Corp.*,
  2010 U.S. Dist. LEXIS 4067 (E.D.N.Y. Jan. 20, 2010)......................................... 18

*Ludwig v. Pret A Manger*,
  11-cv-5677 (S.D.N.Y.) ......................................................................................... 13

*Marshall v. Deutsche Post DHL Express (USA) Inc.*,
  13-cv-1471 (S.D.N.Y.) ......................................................................................... 13

*Matheson v. T-Bone Rest. LLC*,
  2011 U.S. Dist. LEXIS 143773 (S.D.N.Y. Dec. 13, 2011) .................................... 21

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................... 19

*Merino v. Beverage Plus Am. Corp.*,
  2012 WL 4468182 (S.D.N.Y. Sept. 25, 2012) ...................................................... 17

*Miltland Raleigh-Durham v. Myers*,
  840 F. Supp. 235 (S.D.N.Y. 1993) ....................................................................... 17

*Morales v. Rochdale Village, Inc.*,
  1:15-cv-502 (RJD)(SJB) (E.D.N.Y.)..................................................................... 12

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ................................................................................. 10

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
  2010 U.S. Dist. LEXIS 12762 (S.D.N.Y. Feb. 9, 2010) ....................................... 20

*Peebles v. Concourse Village, Inc., et al.*,
  1:20-cv-06940 (GHW) (S.D.N.Y.)........................................................................ 12

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)............................................................................................. 14

*Preldakaj v. The Monarch Condominium, et al.*,
  20-cv-9433(VSB) (S.D.N.Y.)................................................................................ 13

*Pucciarelli v. Lakeview Cars, Inc.*,
  2017 U.S. Dist. LEXIS 98641 (E.D.N.Y. June 23, 2017)...................................... 16

*Ramirez v. Riverbay Corp.*,
   13-cv-2367 (S.D.N.Y.) ................................................................................ 12

*Raniere v. Citigroup Inc.*,
   310 F.R.D. 211 (S.D.N.Y. 2015) ............................................................... 16

*Reyes v. Altamarea Group*,
   2011 U.S. Dist. LEXIS 115984 (S.D.N.Y. Aug. 16, 2011) ................................ 3, 21

*Savoie v. Merchants Bank*,
   166 F.3d 456 (2d Cir. 1999) ......................................................................... 5

*Sewell v. Bovis Lend Lease, Inc.*,
   2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012)........................ 16, 17, 20, 21

*Siewharack v. Queens Long Island Medical Group, P.C.*,
   11-cv-3603 (E.D.N.Y.) .............................................................................. 13

*Taft v. Ackermans*,
   2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007) ...............................11

*Terrana v. JCPenney*,
   13-cv-0460 (S.D.N.Y.) .............................................................................. 13

*Velez v. Majik Cleaning Serv.*,
   2007 U.S. Dist. LEXIS 46223 (S.D.N.Y. June 22, 2007) .......................... 19, 20

*Velez v. Novartis Pharm. Corp.*,
   2010 U.S. Dist. LEXIS 125945 (S.D.N.Y. Nov. 30, 2010)............................ 16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................... 3, 4, 5

*Wu v. Maxphoto NY Corp.*,
   2016 U.S. Dist. LEXIS 158991 (E.D.N.Y. Nov. 15, 2016) ......................... 13

*Yuzary v. HSBC Bank USA, N.A.*,
   2013 U.S. Dist. LEXIS 144327 ............................................................ 16, 19

**Statutes**

29 U.S.C. § 216(b) .................................................................................... 2

NYLL 195(1) and 195(3) ........................................................................... 10

**Rules**

Fed. R. Civ. P. 23............................................................................................ 8

Plaintiff Antonio Onate, Jr. ("Plaintiff" or "Onate") respectfully submits this memorandum of law, by and through his counsel, McLaughlin & Stern, LLP ("M&S"), in support of his unopposed motion for an Order: (1) awarding attorneys' fees in the amount of $1,716,666.67 (*i.e.*, one-third of the Gross Settlement Amount), plus reimbursement of out-of-pocket litigation expenses and costs in the amount of $216,727.87 (*i.e.*, in total $1,933,394.54); (2) approving payment of $55,906.83 from the Gross Settlement Amount to Analytics LLC ("Analytics") for services rendered in connection with the Settlement administration; (3) approving a service award in the amount of $10,000 for Onate; and (4) together with such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

As described in detail in the accompanying Declaration of Jason S. Giaimo dated November 18, 2025 (the "Giaimo Dec." or "Giaimo Declaration"),[1] M&S and Plaintiff have obtained substantial monetary recovery on behalf of non-exempt hourly employees ("Hourly Employees") and salaried overtime eligible employees ("Salaried Employees") of Defendant who worked at any time from October 5, 2014 through the date of the Preliminary Approval Order (*i.e.*, June 9, 2025). More specifically, Plaintiff and Class Counsel secured a $5.15 million Gross Settlement Amount to be paid into a Qualified Settlement Fund from which Class Members will receive a sizeable portion of the wages they allegedly were denied while working for Defendant. In the estimation of Class Counsel, the Gross Settlement Amount represents a significant portion of Class Members' total compensatory damages if they were successful on all of their claims at trial, and represents an excellent result under the circumstances. In fact, based on the research

---

[1]    The Giaimo Declaration is being submitted in support of Plaintiff's Unopposed Motion for Final Approval of the Settlement, as well as Plaintiff's Unopposed Motion for Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

conducted by Class Counsel, the $5.15 million Gross Settlement Amount is one of the largest FLSA class settlements in the Southern District of New York in the past five years.

In consideration for these efforts, Class Counsel requests an award of attorneys' fees in the amount of $1,716,666.67 (*i.e.*, one-third of the Gross Settlement Amount), plus reimbursement of their out-of-pocket litigation expenses in the amount of $216,727.87 (*i.e.*, in total $1,933,394.54). Class Counsel further requests approval for payment of $55,906.83 from the Gross Settlement Amount to Analytics in connection with claims administration services, and a service award in the amount of $10,000 for Onate.

As demonstrated below, an attorneys' fee award of one-third of the Gross Settlement Amount is consistent with awards in similar wage and hour class actions such as this, particularly given the substantial work undertaken by Class Counsel and the results achieved. As described in detail in the Giaimo Declaration, Class Counsel aggressively litigated this case on behalf of Plaintiff and the Class Members, including, *inter alia*, reviewing tens of thousands of pages of Defendant's documents, payroll records, and emails; taking and defending depositions of 31 total witnesses; responding to over 1,550 interrogatories; engaging in substantial third-party discovery; successfully moving for conditional certification pursuant to 29 U.S.C. § 216(b); successfully moving for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure; communicating with scores of Class Members regarding their work experiences for Defendant; and negotiating the Settlement on behalf of the Class.

All told, as of November 13, 2025, Class Counsel devoted over 2,167 hours to this litigation, representing an aggregate lodestar of $1,411,840.00. All of this work was performed on a purely contingent basis in a highly contested case. By reaching a settlement prior to trial, Plaintiff avoided significant expense and delay, and instead ensured recovery for the Class Members. On

a lodestar crosscheck basis, moreover, Class Counsel's fee request represents a modest multiple of 1.2, which is consistent with other awards from Courts in this District and Circuit. The requested service award is also supported by applicable authority and more than reasonable given the extensive efforts undertaken by Onate. And notably, after mailing 8,812 notices to Class Members, only one Class Member has objected to the Settlement (*i.e.*, less than 99%), confirming that the Class resoundingly approves of the Settlement and Class Counsel's request for fees.

For these reasons, as further discussed below, Plaintiff respectfully requests that his motion be granted.

## **ARGUMENT**

## I.     **THE REQUESTED FEE OF ONE-THIRD OF THE GROSS SETTLEMENT AMOUNT IS REASONABLE AND SUPPORTED BY APPLICABLE AUTHORITY**

The law favors compromise and settlement of class action suits. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks omitted).

Where relatively small claims can only be prosecuted through aggregate litigation, and the law relies on prosecution by "private attorneys general" (*Deposit Guar. Nat'l Bank v. Roper*, 2012 U.S. Dist. LEXIS 110300, *14 (1980)), attorneys who "fill the private attorney general role must be adequately compensated for their efforts." *Reyes v. Altamarea Group*, 2011 U.S. Dist. LEXIS 114984, at *20 (S.D.N.Y. Aug. 16, 2011). If not, workplace abuses would go without remedy because attorneys would be unwilling to take on the risk. *See id.*; *see also Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 51 (2d Cir. 2000) (commending the general "sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest.").

As further set forth herein, Class Counsel should be awarded reasonable attorneys' fees in the amount of one-third of the Gross Settlement Amount to compensate them for their work recovering alleged unpaid wages on behalf of the Class.

### A. The Percentage Method is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Second Circuit

Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method—courts in this Circuit consistently prefer the percentage of the fund method in common fund wage and hour class action cases like this one. *See Wal-Mart Stores*, 396 F.3d at 122 ("[t]he trend in this Circuit is toward the percentage method . . . ."); *see also In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *44-45 (S.D.N.Y. July 27, 2007) (noting that the "trend in this Circuit is toward the percentage model").

There are several reasons for this. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve the case efficiently and to create the largest common fund out of which payments to the class can be made. *See Wal-Mart Stores*, 396 F.3d at 122 (citation and quotation marks omitted); *Goldberger*, 209 F.3d at 47-50. The percentage method is also closely aligned with market practices because it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany*, 522 F.3d 182, 190 (2d Cir. 2008) (holding outside the context of a common fund case that a "presumptively reasonable fee" takes into account what a "reasonable, paying client" would pay).

Second, the percentage of the fund method promotes early resolution and removes any theoretical incentive for wasteful litigation in order to increase billable hours. Use of the

percentage of the fund recovery method "provides a powerful incentive for the efficient prosecution and early resolution of the litigation." *Wal-Mart Stores*, 396 F.3d at 122; *see also Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d Cir. 1999) (touting efficiency benefits of percentage of the fund method); *Karpus v. Borelli (In re Interpublic Sec. Litig.)*, 2004 U.S. Dis. LEXIS 21429, at *32-33 (S.D.N.Y. Oct. 26, 2004) (praising the simplicity and efficiency of the percentage of the fund method, and recognizing that "it decreases the incentive to delay settlement because the fee for the plaintiffs' attorney does not increase with delay").

Third, the percentage method preserves judicial resources because it "relieves the court of the cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie*, 166 F.3d at 461, n.4 (citations and internal quotation marks omitted). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49. While courts often (but not always) look at lodestar when applying the percentage of the fund method, the focus is on the more discrete and manageable task of an overall cross check to confirm the reasonableness of the percentage award. *See id.* at 50.

## B. The *Goldberger* Factors Support an Award of One-Third of the Gross Settlement Fund

Reasonableness is the touchstone for determining attorneys' fees. *See Goldberger*, 209 F.3d at 50. In *Goldberger*, the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *See id.* at 50 (internal quotations omitted). Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

### 1. **Class Counsel's Time and Labor**

As described in the Giaimo Declaration, Class Counsel performed a variety of tasks that culminated in the creation of the Gross Settlement Fund, including: (i) drafting a comprehensive Complaint; (ii) drafting detailed document demands, interrogatories, and requests for the production of electronically stored information ("ESI"); (iii) negotiating the production of time and payroll records and relevant ESI; (iv) reviewing tens of thousands of pages of responsive documents, including Class Member payroll records; (v) successfully opposing Defendant's efforts to limit the Class and the scope of discovery to Salaried Employees, culminating in an Order from the Court requiring Defendant to produce discovery for Hourly Employees, thereby substantially increasing the scope of the Class; (vi) pursuing and receiving third-party discovery from BKD, ADP, and UTA, including reviewing thousands of pages of documents produced by such third parties; (vii) defending the depositions of Onate and 23 opt-in plaintiffs; (viii) deposing six of Defendant's key witnesses, including Defendant's expert witness and Chief Financial Officer; (ix) successfully moving for collective certification pursuant to 29 U.S.C. § 216(b) and class certification pursuant to Rule 23; (x) successfully negotiating the Settlement, and thereafter drafting the Agreement and the motions for preliminary and final approval of the Agreement; (xi) communicating with Class Members regarding the Agreement and their experiences working for Defendant; (xii) preparing for trial, including preparing comprehensive pretrial submissions, including exhibit lists, witness lists, and proposed jury instructions; and (xiii) communicating with the Claims Administrator regarding the Notice and a number of administration issues. *See* Giaimo Decl., ¶ 86.

In performing these tasks, Class Counsel has expended over 2,167 hours of professional time for an aggregate lodestar of $1,411,840.00. *See id.* at ¶¶ 101-102.[2]  Class Counsel believes the hours reported are reasonable for a case of this complexity and magnitude and were compiled from time records maintained by each attorney, paralegal, and support staff participating in the case. *See id.*  Notably, the requested fee is not based solely on time and effort already expended; it is also meant to compensate Class Counsel for time they will spend communicating with the Settlement Claims Administrator and Class Members regarding claims and settlement administration issues.  In Class Counsel's experience, administering class settlements of this nature and size requires a substantial and ongoing commitment.

Indeed, "[i]n wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with defendants about administering the settlement and distributing the fund." *Hanifin v. Accurate Inventory and Calculating Service, Inc.*, 2014 U.S. Dist. LEXIS 115710, at *21 (N.D.N.Y. Aug. 20, 2014); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 U.S. Dist. LEXIS 79679, *19 (S.D.N.Y. Aug. 6, 2010) ("because class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower.").  Thus, that the requested fee award will not only compensate Class Counsel for time and effort already expended, but also for time that they will have to spend administering the settlement going forward, also supports the fee request.

By any measure, the time and labor devoted by Class Counsel in this case was substantial. In a span of approximately 4 ½ years, a small team of attorneys and paralegals conducted a detailed

---

[2]    Class Counsel has reviewed its contemporaneous time records and removed any redundant entries and those entries related to ministerial tasks. *See id.* at ¶ 96.

pre-litigation factual investigation, drafted a comprehensive Complaint, reviewed tens of thousands of pages of documents, took and defended 31 depositions, responded to over 1,500 interrogatories, successfully moved for collective certification, successfully moved for class certification, and engaged in protracted and hard-fought settlement negotiations. The net result of these extensive efforts was the creation of a $5.15 million Gross Settlement Amount that will provide meaningful relief to Class Members who otherwise would have received little, if any, recovery in the absence of Class Counsel's efforts.

## 2. <u>Magnitude and Complexity of the Litigation</u>

The size and difficulty of the issues in a case is a significant factor to be considered in making a fee award. *See Goldberger*, 209 F.3d at 50; *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481 (S.D.N.Y. 2013). As the Supreme Court has recognized, "FLSA claims typically involve complex mixed questions of fact and law . . . [t]hese statutory questions must be resolved in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Federal Rule of Civil Procedure 23 in the same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Johnson v. Brennan*, 2011 U.S. Dist. LEXIS 105775, *49 (S.D.N.Y. Sept. 16, 2011).

This case involved a myriad of complex factual and legal issues that required significant briefing and legal analysis, including, among other things, whether the proposed class included Hourly Employees in addition to Salaried Employees, and the admissibility of BKD's preliminary audit report. Perhaps the most complex and contested issue in the case concerned the certifiability of Plaintiff's claims. Throughout the litigation, Defendant maintained that Plaintiff's claims were

inappropriate for class treatment, arguing that individualized issues predominated over common issues, including that Class Members performed their duties differently depending on their job title and responsibilities and where they worked.  Although Plaintiff was successful in obtaining collective and class certification, Defendant represented that it intended to move to decertify the collective and certified class, which presented considerable risks to Plaintiff and the Class.

Plainly, preparing and putting on evidence on these and other complex factual and legal issues at trial would have consumed tremendous amounts of time and resources for both sides, as well as requiring substantial judicial resources to adjudicate the parties' disputes.  A complicated trial would have likely been necessary, featuring dueling experts and sophisticated statistical analyses, as well as extensive testimony by Defendant's managers and supervisors, and numerous Class Members.  Any verdict would have likely been appealed, thereby extending the duration of the litigation. By reaching the Settlement prior to trial, Plaintiff was able to avoid significant expense and delay, and instead ensure recovery for the Class Members.  Indeed, the Settlement makes substantial monetary relief available to all Class Members certain, in a prompt and efficient manner.

### 3.  Risk of Litigation

The risk of litigation is also an important factor in determining a fee award. Uncertainty that an ultimate recovery will be obtained is highly relevant in determining the reasonableness of an award.  *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974). "[D]espite the most rigorous and competent of efforts, success is never guaranteed." *Id.* at 471.

In this case, the risks attendant to the litigation were enormous.  Although Plaintiff was successful in obtaining collective and class certification, Defendant made clear that it intended to move for decertification.  While Plaintiff was confident in his ability to prevail on Defendant's

anticipated motion to decertify, there was a risk that the Court would determine that Class Members performed their duties differently depending on where they worked, who supervised them, and other factors, and that these differences precluded class certification. *See Myers v. Hertz Corp.*, 624 F.3d 537, 549-51 (2d Cir. 2010) (affirming denial of class certification based on evidence that class members' duties varied by location).  If that were to have occurred, most Class Members would have lacked the incentive or wherewithal to pursue their claims on an individual basis, leaving them no recovery whatsoever.

Moreover, at the time the Settlement was reached, Defendant had filed a motion for judgment on the pleadings with respect to Plaintiff's claims for Defendant's alleged violations of NYLL §§ 195(1) and 195(3), which, if granted, would have significantly reduced the total possible damages Plaintiff could have obtained on behalf of the Class at trial.  Likewise, at the time the Settlement was reached, Defendant had filed a motion to exclude Plaintiff's expert testimony, which, if granted, would have made it extremely difficult, if not impossible, for Plaintiff to establish class-wide damages at trial.

Had the case ultimately proceeded to trial, Plaintiff may have been unable to prove all the necessary elements of his claims, including that Defendant's management knew or should have known that Class Members were performing work before and/or after the end of their scheduled shifts or during meal breaks.  In addition, Defendant had asserted a number of affirmative defenses to Plaintiff's claims.  Needless to say, had any of these issues been resolved in Defendant's favor, Plaintiff's ability to secure meaningful relief for other Class Members would have been severely compromised.  Moreover, there were real risks of collectability if Plaintiff overcame these obstacles and succeeded at trial given Defendant's not-for-profit status.

In the face of these serious risks, Class Counsel undertook this action without any assurance of payment for their services and achieved a $5.15 million settlement for the Class Members, many of whom will receive thousands of dollars in unpaid wages that would never have been recovered absent this litigation. Self-evidently, in light of the strengths and weaknesses of the case, the Settlement achieves significant benefits for the Class Members in a case where failure at trial was certainly possible. Accordingly, the risk of litigation and collection weighs heavily in favor of Class Counsel's request for attorneys' fees.

### 4. <u>Quality of Representation</u>

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, *10 (S.D.N.Y. Jan. 31, 2007).

Viewed in the context of the recovery achieved, the $5.15 million Gross Settlement Amount represents a significant portion of all Class Members' possible compensatory damages if they were successful on all their claims at trial. *See* Giaimo Decl., ¶ 62. The individual sums Class Members will receive from the Settlement further demonstrates the favorable result Class Counsel achieved. Specifically, even after deducting the fees requested by Class Counsel in this motion, out of the 8,812 total participating Class Members, 1,057 Class Members can expect to receive between $50 and $99 from the Net Settlement Fund; 5,031 Class Members can expect to receive between $100 and $999 from the Net Settlement Fund; and 876 Class Members can expect to receive $1,000 or more from the Net Settlement Fund. *See id.* at ¶ 63. Additionally, the average projected Class Member award is approximately $336, with approximately 25% of Class Members receiving $500 or more. *Id.* Self-evidently, these are meaningful sums for Class Members, many of whom are low- or medium-income wage earners.

Class Counsel's experience also weighs in favor of approving their requested fee. M&S has substantial experience prosecuting large-scale class and wage and hour actions such as this. *See id.* at ¶ 98. Among the recent settlements achieved by Class Counsel are: *Frlekin v. Apple, Inc.*, 13- cv-3451 (N.D. Cal.) (M&S appointed co-Class Counsel and secured a $30.5 million settlement on behalf of approximately 14,000 employees who went through uncompensated security screenings); *Ramirez v. Riverbay Corp.*, 13-cv-2367 (S.D.N.Y.) (M&S appointed Co-lead counsel and obtained a $6.25 million settlement for over 1,700 employees who alleged they were not compensated for work performed before and after scheduled shifts and wrongfully paid compensatory time rather than overtime cash payments); *Civil v Starrett City, Inc., et al.*, 18-cv-2256(PK) (E.D.N.Y.) (M&S appointed Class Counsel in connection with $4.75 million settlement on behalf of employees who alleged they were not compensated for work performed before and after scheduled shifts); *Felix v. St. Catherine of Siena Medical Center, et al.*, 2:21-cv-03220 (NJC)(SIL) (E.D.N.Y.) (M&S appointed lead counsel and obtained a $2.75 million settlement on behalf of employees who alleged they were not compensated for work performed before and after scheduled shifts and during uncompensated meal breaks); *Morales v. Rochdale Village, Inc.*, 1:15-cv-502 (RJD)(SJB) (E.D.N.Y.) (M&S appointed lead counsel and obtained a $2.65 million settlement on behalf of employees who alleged they were not compensated for work performed before and after scheduled shifts); *Peebles v. Concourse Village, Inc., et al.*, 1:20-cv-06940 (GHW) (S.D.N.Y.) (M&S appointed Class Counsel in connection with settlement of $1,150,000 on behalf of employees who alleged they were not compensated for work performed before and after scheduled shifts); *Griffin v. Endicott Coil Company, Inc.*, 3:22-cv-01128-MAD-ML (N.D.N.Y.) (M&S appointed Class Counsel in connection with preliminarily approved $1.05 million settlement on behalf of employees who alleged they were not compensated for work performed

before and after scheduled shifts and during meal breaks); *Preldakaj v. The Monarch Condominium, et al.*, 20-cv-9433(VSB) (S.D.N.Y.) (M&S appointed Class Counsel in connection with $912,500 settlement on behalf of employees who alleged they were not compensated for work performed before and after scheduled shifts).[3]

Class Counsel's skill and experience directly brought about the favorable settlement of behalf of Class Members and weighs in favor of granting the requested fee.

### 5. **Fee in Relation to Settlement**

Courts also consider the size of the settlement to ensure that the percentage awarded does not constitute a "windfall." *See In re Gilat Satellite Networks, Ltd.*, 2007 U.S. Dist. LEXIS 68964, at *51-52, n. 41 (E.D.N.Y. Sept. 18, 2007); *see also Behzadi v. Int'l Creative Mgmt. Partners, LLC*, 2015 U.S. Dist. LEXIS 90117, at *7 (S.D.N.Y. July 9, 2015). Here, Class Counsel's one-third fee request is reasonable and "consistent with the norms of class litigation in this circuit." *Gilliam v. Addicts Rehab. Ctr. Fund*, 2008 U.S. Dist. LEXIS 23016, *15 (S.D.N.Y. Mar. 24, 2008); *see also Wu v. Maxphoto NY Corp.*, 2016 U.S. Dist. LEXIS 158991, at *38 (E.D.N.Y. Nov. 15, 2016).

Indeed, courts in this District and Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness. *See Azogue v. 16 for 8 Hosp. LLC*, 2016 U.S. Dist. LEXIS 111134, at *17 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at

---

[3]     *See also Siewharack v. Queens Long Island Medical Group, P.C.*, 11-cv-3603 (E.D.N.Y.) (M&S appointed Co-lead counsel and obtained $2.45 million settlement for employees of medical company who were not compensated for time worked); *Ludwig v. Pret A Manger*, 11-cv-5677 (S.D.N.Y.) (M&S appointed Co-lead and obtained $299,000 settlement for misclassified managers in training); *Marshall v. Deutsche Post DHL Express (USA) Inc.*, 13-cv-1471 (S.D.N.Y.) (M&S appointed Lead Counsel and obtained a $1.5 million settlement as class counsel in a wage and hour class action on behalf of DHL clearance agents in New York, California and Florida); and *Terrana v. JCPenney*, 13-cv-0460 (S.D.N.Y.) (M&S appointed Co-lead counsel and obtained a $750,000 settlement in a wage and hour class action on behalf of non-exempt hourly employees of JCPenney in New York).

*26 (S.D.N.Y. Oct. 2, 2013); *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, at *27-28 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA wage and hour case).

Thus, Class Counsel are by no means requesting a "windfall" for their efforts on behalf of Class Members. Rather, Class Counsel are requesting a reasonable fee based on a percentage approved by other courts in this District and Circuit in similar settlements of this nature.

### 6.  Public Policy Considerations

Public policy considerations also weigh in favor of granting Class Counsel's requested fees. In rendering awards of attorneys' fees, "the Second Circuit and courts in this district . . . have taken into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 399.

The FLSA and the NYLL are remedial statutes designed to protect workers, "the purpose of which are served by adequately compensating attorneys who protect wage and hour rights." *Garcia v. Pancho Villa's of Huntington Vill., Inc.*, 2012 U.S. Dist. LEXIS 144446, at *19 (E.D.N.Y. Oct. 4, 2012). Class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *J.I. Case Co. v. Borak*, 377 U.S. 426, 433-34 (1964). Moreover, courts have recognized that fee awards in cases like this serve the dual purposes of encouraging "private attorney[s] general" to seek redress for violations and discouraging future misconduct of a similar nature. *See Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *see also Toure*. An award of attorneys' fees helps to ensure that "plaintiffs' claims [will] . . . be heard." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005).

14

In this case, public policy considerations weigh heavily in favor of awarding Class Counsel's requested fee. The alleged violations are of long-standing duration. Nevertheless, no state or federal governmental action has ever been brought against Defendant to correct these alleged wage abuses. The award of Class Counsel's requested fees would encourage the prosecution of similar claims and further a significant public interest goal.

In sum, all of the *Goldberger* factors justify granting Class Counsel's fee request.

## C.  The Lodestar Cross Check Further Supports an Award to Class Counsel of One-Third of the Gross Settlement Amount

Following *Goldberger*, the trend in the Second Circuit has been to apply the percentage method and use the lodestar method as a "baseline" or as a "cross check." *See Goldberger*, 209 F.3d at 50; *see also Yuzary*, 2013 U.S. Dist. LEXIS 144327 at *27-28. As part of the cross check, the lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *See Hicks v. Stanley*, 2005 U.S. Dist. LEXIS 24890, at *27-28 (S.D.N.Y. Oct. 24, 2005). In calculating the lodestar for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case . . . ." *Id.* In doing so, courts consider whether a multiplier is warranted based on: (1) the contingent nature of the expected compensation for services rendered; (2) the consequent risk of non-payment viewed as of the time of filing the suit; (3) the quality of representation; and (4) the results achieved. *See In re Boesky Sec. Litig.*, 888 F. Supp. 551, 562 (S.D.N.Y. 1995).

Here, Class Counsel's request for one-third of the Gross Settlement Amount is only approximately 1.2 times Class Counsel's "lodestar" (Giaimo Decl., ¶ 102), which is well within the reasonable range of multipliers. Indeed, courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers. *See Beckman*, 293 F.R.D. at

15

482 (approving 6.3 multiple in $4.9 million wage and hour settlement and stating that plaintiffs' counsel should not be penalized "for achieving an early settlement, particularly where, as here, the settlement amount is substantial"); *Yuzary*, 2013 U.S. Dist. LEXIS 144327 *27-29 (approving 7.6 multiple in $15.625 million wage and hour settlement); *Sewell v. Bovis Lend Lease, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *38 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six"); *Pucciarelli v. Lakeview Cars, Inc.*, 2017 U.S. Dist. LEXIS 98641, *5-6 (E.D.N.Y. June 23, 2017) ("[c]ourts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements"); *Velez v. Novartis Pharm. Corp.*, 2010 U.S. Dist. LEXIS 125945, *64 (S.D.N.Y. Nov. 30, 2010) (finding that a multiplier of 2.4 "falls well within (indeed, at the lower end) of the range of multipliers accepted within the Second Circuit.").

The hourly rates used in calculating Class Counsel's lodestar are consistent with rates used by courts in this District and Circuit. *See, e.g.*, *Griffin v. Endicott Coil Company, Inc.*, 3:22-cv-01128-MAD-ML, Dkt. No. 41 (N.D.N.Y. April 9, 2024 (approving M&S attorneys' fees, including $750 per hour for Brett R. Gallaway, Esq., $900 per hour for Lee S. Shalov, Esq., and $575 per hour for Jason S. Giaimo, Esq.); *Civil v. Starrett City, et al.*, 18-cv-2256, Dkt. No. 63 (E.D.N.Y. Sept. 27, 2019) (approving M&S's hourly rates); *Alvarez v. Fine Craftsman Grp., LLC*, 2024 U.S. Dist. LEXIS 143079, at *8 (S.D.N.Y. Aug. 6, 2024) (Willis, M.J.) (approving hourly rates of $600 per hour, and noting that other courts have approved hourly rates of $650-$950 per hour for partners, and that in the non-FLSA context, this Court recently approved hourly rates for partners as high as $1,950); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211 (S.D.N.Y. 2015) (approving "typical hourly rates [of] $650-950 per hour for partners, $350-600 per hour for associates, and $180 per hour for staff and paralegals"); *D'Angelo v. Hunter Bus Sch., Inc.,* 2023 U.S. Dist. LEXIS 131029

at *29-30 (E.D.N.Y. July 28, 2023) (approving hourly rates of $800 per hour for partners, $700 per hour for 7th year associate, $500 per hour for 4th year associate, and $275 per hour for paralegals); *Asare v. Change Group N.Y., Inc.*, 2013 WL 6144764, at *18-19 (S.D.N.Y. Nov. 18, 2013) (approving as reasonable hourly rates of $750 for partner time, $500 per hour for senior associate time, and $300 per hour for associate time); *Merino v. Beverage Plus Am. Corp.*, 2012 WL 4468182, at *3 (S.D.N.Y. Sept. 25, 2012) (approving as reasonable $700 per hour for partner).[4]

Moreover, "where class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower because the award includes not only time spent prior to the award, but after in enforcing the settlement." *Sewell*, 2012 U.S. Dist. LEXIS 53556 at *38 (internal quotations and citations omitted).  Accordingly, the lodestar cross check further supports approval of Class Counsel's fee request.[5]

## II.    CLASS COUNSEL ARE ENTITLED TO REIMBURSEMENT OF THEIR LITIGATION EXPENSES

Class Counsel also request reimbursement of expenses in the amount of $216,727.87 to be paid from the Gross Settlement Amount.  Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840

---

[4]    This Court's decision in *Jian Xin Zhang v. Great Sichuan on 3rd Ave. Inc.*, 2025 U.S. Dist. LEXIS 22793 (S.D.N.Y. Feb. 7, 2025) is inapposite and distinguishable as that decision concerned attorneys' fees to be awarded pursuant to the FLSA as a prevailing party after entry of a default judgment, whereas here, Class Counsel seek approval of fees pursuant to a Settlement, which the overwhelming majority of Class Members approve of.  Moreover, unlike in *Jian Xin Zhang*, Class Counsel have reviewed their time entries and removed any redundancies and those associated with ministerial tasks.  *See* Giaimo Dec., ¶ 96.

[5]    M&S's use of block billing is permissible in this Circuit as the Court can determine the reasonableness of the work performed based on the time entries.  *See Adell v. City of New York*, 2015 U.S. Dist. LEXIS 25510, at *14-15 (S.D.N.Y. Mar. 2, 2015)  (approving use of block billing); *Assif v. Titleserv, Inc.*, 2015 U.S. Dist. LEXIS 198200, at *48-49 (E.D.N.Y. Aug. 14, 2015) (same).

F. Supp. 235, 239 (S.D.N.Y. 1993)); *see also Khait v. Whirlpool Corp.*, 2010 U.S. Dist. LEXIS 4067, *25 (E.D.N.Y. Jan. 20, 2010) ("[c]ourts typically allow counsel to recover their reasonable out-of-pocket expenses").

Here, Class Counsel's unreimbursed expenses over the course of the litigation were necessary to prosecute Plaintiff's claims. As described in the Giaimo Declaration, a substantial portion of these expenses (totaling $56,420.42) were associated with the expert fees of EmployStats, who spent many hours creating a sophisticated damages analysis, including reviewing and analyzing thousands of pages of employee wage records, communicating with Class Counsel, and issuing an expert report. *See* Giaimo Decl., ¶ 104. Another substantial portion of these expenses (totaling $13,155.76) were associated with deposition transcript costs. *Id.* M&S also incurred expenses totaling $16,451.37 in connection with Analytics' dissemination of notice of the Court's order granting Plaintiff's motion for class certification, as well as $11,575.00 in mediation expenses. *Id.*

In addition, M&S incurred substantial expenses (totaling $56,475.80) for the use of two outside independent contract attorneys (the "Contract Attorneys"), who were instrumental in reviewing documents and contacting opt-in plaintiffs concerning the opt-in process after collective certification. Specifically, after the Court granted collective certification, the Contract Attorneys were tasked with communicating with prospective collective members concerning their right to opt-in to the certified collective. *See id.* at ¶ 105. The Contract Attorneys, with the oversight and supervision of M&S, spent considerable time responding to prospective collective member inquiries and affirmatively contacting prospective collective members to inform them about their rights to opt-in. *See id.* M&S was in constant communication with the Contract Attorneys during this period, including engaging in weekly status calls with the Contract Attorneys and answering

any questions they may have. *See id.* The outreach campaign coordinated by M&S and performed by M&S and the Contract Attorneys was wildly successful as over 1,100 Employees opted in. *See id.* The Contract Attorneys were also helpful in securing declarations from class members in support of Plaintiff's motion for class certification. *See id.* at ¶ 90. Given the size of the collective and class, and the substantial time and effort required to effectively communicate with the collective and class members, the Contract Attorneys' efforts in this regard were invaluable.

Numerous courts in this District recognize that such expenses are recoverable as reasonable and justified expenses incurred in the ordinary course of prosecution of Plaintiffs' claims. *See, e.g.*, *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) (approving request by plaintiffs' counsel for reimbursement of expenses incurred by contract attorneys who reviewed "millions of documents," and expressing "appreciate[ion] [for] Counsel's decision to treat these contractor fees as an expense."); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 671 (S.D.N.Y. 2015) (approving request by plaintiffs' counsel for reimbursement of contract attorney expenses as "reasonable and justified"). In fact, that M&S treated the Contract Attorney's time "as an expense rather than included in the lodestar . . . weighs heavily in favor of granting the expenses." *Dial*, 317 F.R.D. at 438.

The remainder of the expenses, including court fees, postage fees, photocopies, and research, were all necessarily incurred in the prosecution of this action. As such, it is appropriate for the Court to approve Class Counsel's request for reimbursement. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327 at *31-32 ("[h]ere, Class Counsel's unreimbursed expenses, including court and process server fees, postage and courier fees, transportation, working meals, photocopies, electronic research, expert fees, and Plaintiffs' share of the mediator's fees, are reasonable and were incidental and necessary to the representation of the class.").

### III.     THE REQUESTED SERVICE AWARD IS FAIR AND REASONABLE

Courts acknowledge that named plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *See Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, *7 (S.D.N.Y. June 22, 2007) ("in employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers") (internal quotation marks and citation omitted).  "[S]ervice awards are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs."  *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015).

In assessing the reasonableness of service awards, courts consider the risks the class representatives assume in serving the interests of the class.  *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, *4 (S.D.N.Y. Feb. 9, 2010) ("[e]nhancement awards for class representatives serve the dual functions of recognizing the risks incurred by named plaintiffs and compensating them for their additional efforts.").  In the employment context, where workers are often blacklisted if they are considered "trouble makers," plaintiffs who sue their employers are particularly vulnerable to retaliation. *See Frank*, 228 F.R.D. at 187-88; *Velez*, 2007 U.S. Dist. LEXIS 46223 at *23 (observing that the plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").  Even where there is not a record of actual retaliation, plaintiffs and opt-in plaintiffs merit recognition for assuming the risk of retaliation for the sake of absent class members. *See, e.g., Sewell*, 2012 U.S. Dist. LEXIS 53556 at *41 ("[p]laintiffs litigating cases in an employment

context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone v. BH S&B Holdings, LLC*, 2011 U.S. Dist. LEXIS 126026, *20 (S.D.N.Y. Oct. 28, 2011) ("[e]ven where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members.").

Here, Onate seeks a service award of $10,000, which is well within the range of awards approved by other courts in class actions of this nature. *See, e.g.*, *Sewell*, 2012 U.S. Dist. LEXIS 53556 at *40-42 (approving services awards of $15,000 and $10,000 for the class representatives); *Reyes v. Altamarea Group*, 2011 U.S. Dist. LEXIS 115984, *24 (S.D.N.Y. Aug. 16, 2011) (approving service awards of $15,000 each for three class representatives and $5,000 for a fourth class representative to be paid out of the settlement fund); *Matheson v. T-Bone Rest. LLC*, 2011 U.S. Dist. LEXIS 143773, *25 (S.D.N.Y. Dec. 13, 2011) (approving service awards of $45,000 and $5,000 for the class representatives in a wage and hour class action).

Onate was instrumental in the success of this case. He took on the role as the named plaintiff, providing the details of his experiences to Class Counsel in connection with drafting the Complaint, and actively participating in discovery, including appearing for his deposition. *See* Declaration of Antonio Onate, Jr. dated November 13, 2025 at ¶¶ 2-4. Additionally, Onate submitted declarations in support of Plaintiff's motion for collective certification and class certification, and was in active communication with Class Counsel throughout the litigation, including during settlement discussions which culminated in the Agreement. Onate undertook these efforts without any assurance he would be compensated for his time. *See id.* at ¶ 4-7. Moreover, Onate assumed significant risk in lending his name to the lawsuit, including with respect to future prospective employment opportunities. *See id.* at ¶ 8.

Accordingly, the Court should award Onate a service award of $10,000 in recognition of his efforts on behalf of the Class.

**<u>CONCLUSION</u>**

For the reasons set forth herein, Plaintiff respectfully requests that the Court: (1) award attorneys' fees in the amount of $1,716,666.67 (*i.e.*, one-third of the Gross Settlement Amount); plus reimbursement of out-of-pocket litigation expenses and costs in the amount of totaling $216,727.87 (*i.e.*, in total $1,933,394.54); (2) approving payment of $55,906.83 from the Gross Settlement Amount to Analytics for services rendered in connection with the Settlement administration; (3) approving a service award in the amount of $10,000 for Onate; and (4) together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
      November 18, 2025

McLAUGHLIN & STERN, LLP

By: */s/ Jason S. Giaimo*
      Jason S. Giaimo
      Brett R. Gallaway
      Lee S. Shalov
260 Madison Avenue
New York, New York 10016
Tel.: (212) 448-1100
jgiaimo@mclaughlinstern.com
bgallaway@mclaughlinstern.com
lshalov@mclaughlinstern.com
*Class Counsel*