UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANTONIO ONATE, JR., on behalf of himself and all others similarly situated,<br><br>                    Plaintiff,<br><br>     v.<br><br>AHRC HEALTH CARE, INC.,<br><br>                    Defendant. | Case No.: 1:20-cv-08292-AS-JW |

## [PROPOSED] FINAL JUDGMENT GRANTING: (1) FINAL SETTLEMENT APPROVAL; (2) APPROVAL OF ATTORNEYS' FEES AND EXPENSES; (3) APPROVAL OF SETTLEMENT CLAIMS ADMINISTRATOR'S EXPENSES; AND (4) SERVICE AWARD TO PLAINTIFF

A.      Plaintiff Antonio Onate, Jr. ("Onate") commenced this action against Defendant AHRC Health Care, Inc. ("AHRC" or "Defendant") on October 5, 2020, by serving and filing a Complaint on behalf of current and former non-exempt hourly paid employees ("Hourly Employees") and salaried overtime eligible ("Salaried Employees") of AHRC, generally alleging that AHRC owed him and other Class Members unpaid straight and overtime compensation for: (a) improperly paying Salaried Employees according to their scheduled shifts even though such employees were clocked in and working before and after their shifts; and (b) automatically deducting meal breaks from Salaried Employees and Hourly Employees despite that such employees performed work during some or all of their uncompensated meal breaks.  *See* Dkt. No. 1.  Plaintiff further alleged that Defendant failed to provide him and other Class Members with appropriate pay rate acknowledgement forms and weekly wage statements. *See id.*  Plaintiff asserted claims under the Fair Labor Standards Act ("FLSA") and under applicable New York Labor Law ("NYLL").  *See id.*

B.     Defendant filed its Answer on January 8, 2021, generally denying the allegations in the Complaint. *See* Dkt. No. 34.

C.     Thereafter, the Parties proceeded with discovery, with Onate serving his First Combined First Set of Interrogatories and Requests for the Production of Documents on February 16, 2021 ("Plaintiff's Discovery Demands"). In response to Plaintiff's Discovery Demands, Defendant initially produced approximately 300 pages of documents limited to Onate's personnel file and time and pay records, taking the position that Plaintiff was not entitled to pre-certification discovery concerning the proposed class members. On April 14, 2021, the Court held a pre-motion conference, during which the Court ordered Defendant to search for and produce appropriate class-wide documents and information responsive to Plaintiff's Discovery Demands, including searching for and producing electronically stored information.

D.     Subsequently, on May 20, 2021, Defendant produced a class list identifying only Salaried Employees employed by Defendant during the relevant period, taking the position that Hourly Employees were not encompassed within Plaintiff's proposed class definition. The next day, Plaintiff sought an Order compelling Defendant to provide the exact criteria used by Defendant to generate the class list as Plaintiff maintained that the class encompassed Hourly Employees. The Court, however, held that the criteria used by Defendant was "in line with the Court's directives given the April 14, 2021 telephone conference addressing, inter alia, the definition of the class."

E.     Thereafter, Plaintiff and Defendant agreed to the production of a representative sampling of time and payroll records concerning the Salaried Employees, while maintaining their respective positions concerning the inclusion of Hourly Employees in the action. Defendant also produced, on a rolling basis, certain emails and other communications responsive to Plaintiff's

Discovery Demands. In total, by the conclusion of discovery, Defendant produced over 80,000 pages of documents, including time and pay records, emails, policy documents, and other materials.

      F.      On October 7, 2021, the Parties participated in a mediation before Carol Wittenberg, Esq. The Parties, however, were unable to resolve their disputes.

      G.      The Parties resumed discovery, and between September 20, 2021 and January 1, 2022, the following individuals opted in to the action: Robert Barlow ("Barlow"), Melissa Duncan ("Duncan"), Charles Dandy ("Dandy"), Alisha Anderson ("Anderson"), Shefa Alaakoori ("Alakoori"), Theo Brown ("Brown"), Kenisha Osbourne f/k/a Cupid ("Osbourne"), and Teaner Arnold ("Arnold"). Defendant subsequently served document demands and interrogatories upon each of these opt-in plaintiffs, who in turn served their respective objections and responses on Defendant.

      H.      On March 7, 2022 and March 8, 2022, Plaintiff took the depositions of Tasha Saffold (Defendant's Payroll Manager) and Sharon Fong (Defendant's Chief Human Resources Officer), respectively.

      I.      Plaintiff then filed another letter motion to compel Defendant to produce a class list inclusive of Hourly Employees, along with a supplemental production of documents pertaining to Hourly Employees. *See* Dkt. No. 79. On April 22, 2022, this Court denied Plaintiff's letter motion. *See* Dkt. No. 83. On May 4, 2022, Plaintiff filed his objections to the Order. *See* Dkt. No. 92. On May 26, 2022, the Court sustained Plaintiff's objections in substantial part, holding that Hourly Employees were within the proposed class and ordering Defendant to produce a list of proposed class members inclusive of Hourly Employees. *See* Dkt. No. 102. Thereafter, Defendant produced

an updated class list and further supplemented its production with additional documents concerning Hourly Employees.

  J.  On March 4, 2022, Defendant deposed Onate. Between March 2022 and December 2022, Defendant deposed each of Barlow, Duncan, Dandy, Anderson, Alakoori, Brown, Osbourne, and Arnold. Between June 7, 2022 and June 8, 2022, the following additional Employees opted in: Ciara Jones Best ("Jones Best"), Yany Ulloa ("Ulloa"), and Jessica Registre ("Registre"). Defendant then served document demands and interrogatories upon each of Jones Best, Ulloa, and Registre, and after receipt of their timely responses and objections to Defendant's discovery demands, Defendant deposed each of Jones Best, Ulloa, and Registre.

  K.  On April 24, 2023, Plaintiff took the depositions of Melissa Diaz (Defendant's Senior HR Leader) and Risa Kantor (Defendant's former Assistant Director of HR Projects). On May 3, 2023, Plaintiff took the deposition of Amy West (Defendant's CFO).

  L.  Plaintiff also served a Subpoena Duces Tecum and Ad Testificandum upon BKD, LLP (n/k/a Forvis, LLC), who produced approximately 9,000 pages of documents and produced a corporate representative for its deposition.

  M.  On April 25, 2022, Plaintiff filed a motion for collective certification pursuant to 29 U.S.C. § 216(b). *See* Dkt. No. 85-87. By Report and Recommendation dated January 5, 2023 (the "R&R"), the undersigned recommended that the Court grant Plaintiff's motion for collective certification with respect to all Employees other than those in the Home Health Department. *See* Dkt. No. 142. By Opinion and Order dated February 9, 2023, the Court adopted the R&R in full. *See* Dkt. No. 146. Thereafter, notice was distributed to members of the conditionally certified class and 1,120 Employees opted-in, including 11 opt-in plaintiffs who opted in prior to the distribution of the collective notice.

N.      On August 1, 2023, Plaintiff moved for class certification pursuant to Rule 23. *See* Dkt. Nos. 194-196. On December 14, 2023, the Court granted, in substantial part, Plaintiff's motion for class certification, certifying a class of Hourly Employees and a class of Salaried Employees, with the exception of Plaintiff's off-the-clock claims, and appointing McLaughlin & Stern, LLP ("M&S") as Class Counsel. *See* Dkt. No. 218. Thereafter, notice was distributed to the Class, affording each Class Member an opportunity to request exclusion.

O.      On January 31, 2025, Defendant filed a motion to exclude Plaintiff's damages expert's testimony and a motion for summary judgment as to Plaintiff's time rounding claims. *See* Dkt. Nos. 255-261. On February 21, 2025, the Parties stipulated that Plaintiff, members of the certified collective, and members of the certified classes will not seek damages related to or arising out of the time rounding practices and policies of Defendant. *See* Dkt. No. 266. Plaintiff opposed Defendant's motion to exclude Plaintiff's expert report, and deposed Defendant's expert in connection therewith. *See* Dkt. No. 267. On April 3, 2025, Defendant filed a motion for judgment on the pleadings, seeking dismissal of Plaintiff's claims for Defendant's alleged violations of NYLL §§ 195(1) and 195(3). *See* Dkt. Nos. 279-280. Plaintiff filed his opposition to Defendant's motion for judgment on the pleadings on April 17, 2025. *See* Dkt. No. 283.

P.      On March 20, 2025, the Parties participated in a mediation before Stephen Sonnenberg, Esq. While the Parties were unable to resolve their dispute, they narrowed the issues and continued settlement discussions over the course of the next several weeks, ultimately culminating in the Settlement.

Q.      On June 3, 2025, Plaintiff filed his Unopposed Motion for Preliminary Approval of the Settlement. *See* Dkt. Nos. 301-302. On June 9, 2025, the Court granted Plaintiff's motion and preliminarily approved the Settlement, appointed M&S as Class Counsel; and approved the

proposed Notice and directed that the Notice be sent to Class Members, and set a date for the final fairness hearing (the "Preliminary Approval Order").  *See* Dkt. No. 306.

R.     On July 14, 2025, Notice of the Settlement was disseminated to Class Members via First Class Mail and email to those Class Members for whom email addresses were available. Among other things, the Notice contained relevant information about the nature of the lawsuit, including how Class Members could object to the Settlement, as well as how the Individual Settlement Amounts will be calculated, attorneys' fees and expenses, and the proposed service award to Onate.  As detailed in the Declaration of Jeff Mitchell dated November 13, 2025 ("Mitchell Declaration"), approximately 98% of the Class Members received Notice of the settlement.

S.     The Class Action Fairness Act of 2005, 28 U.S.C. § 1711, *et seq.* ("CAFA"), requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed with the court, each defendant that is participating in the proposed settlement . . . serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]"  28 U.S.C. § 1715(b).

T.     On June 13, 2025, Defendant served appropriate notices of the Settlement pursuant to CAFA.  The CAFA objection period has expired and no objections were received from any state or federal officials.

U.     On November 18, 2025, Plaintiff filed an unopposed motion for an Order granting final approval of the Settlement, including: (i) approving the Settlement and Agreement as final, fair, reasonable, and adequate; and (ii) entering judgment in accordance with the Agreement.  The same day, Plaintiff filed an unopposed motion for an Order: (i) granting Class Counsel's

application for attorneys' fees and reimbursement of expenses; and (2) granting a service award to Onate.

NOW, THEREFORE, IT IS HEREBY ORDERED, upon consideration of the Agreement, the Parties' briefs, declarations, and oral arguments in support thereof, and the proceedings in this action to date, as follows:

1.       Except as otherwise specified herein, the Court for purposes of this Order adopts all defined terms set forth in the Agreement.

2.       This Court has jurisdiction over the subject matter of this action, all matters relating thereto, and all Parties.

3.       If, for any reason, the Effective Date does not occur, the Parties shall return to their respective positions in the Litigation as those positions existed immediately before the Parties executed the Agreement, and nothing stated in the Agreement or any other papers filed with this Court in connection with the Settlement shall be deemed an admission of any kind by any of the Parties or used as evidence against, or over the objection of, any of the Parties for any purpose in the Litigation or in any other action.

A.       **The Class Notice Satisfied the Requirements of Rule 23**

4.       The Notice disseminated to Class Members pursuant to the Preliminary Approval Order constitutes the best notice practicable under the circumstances, was accomplished in all material respects, and fully meets the requirements of Federal Rule 23.

5.       More specifically, the Notice was written in plain English and was organized and formatted to be as clear as possible.  The Notice described the terms of the Settlement, informed Class Members about the process to object to the Settlement, informed Class Members about the

allocation of attorneys' fees and costs, and provided specific information regarding the date, time, and place of the final approval hearing.

6.      According to the Mitchell Declaration, the number of Class Members who received Notice Packets was 8,626 out of the final class list of 8,812.  In other words, approximately 98% of Class Members received the Notice.

7.      Accordingly, the Notice constituted the best notice practicable under the circumstances and meets the requirements of Federal Rule 23.  *See, e.g., Marin v. 310 Bowery Grp. LLC*, 2025 U.S. Dist. LEXIS 53631, at *19 (S.D.N.Y. Mar. 24, 2025); *Gordon v. Vanda Pharms. Inc.*, 2022 U.S. Dist. LEXIS 169982, at *22-23 (E.D.N.Y. Sept. 15, 2022).

### B.      The Court Grants Final Approval of the Settlement

8.      As set forth below, the Settlement is procedurally and substantively fair, reasonable, and adequate in all respects and pursuant to Federal Rule 23(e), the Court grants final approval of the Settlement.

9.      As amended in 2018, Rule 23(e)(2) requires courts to consider whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's-length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. FED. R. CIV. P. 23(e)(2).  Prior to 2018, courts in the Second Circuit considered whether a proposed settlement was substantively fair by considering the Grinnell factors outlined in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974)

("*Grinnell*").  As the Rule 23(e)(2) factors add to, rather than displace, the *Grinnell* factors, courts in this Circuit continue to evaluate proposed settlements utilizing the *Grinnell* factors in conjunction with Rule 23(e)(2).

10.    When looking to whether the agreement is procedurally fair, courts consider whether the parties engaged in arms-length negotiations between experienced, capable counsel after meaningful discovery.  *See Marin*, 2025 U.S. Dist. LEXIS 53631 at *26. "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement."  *In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, *12 (S.D.N.Y. July 27, 2007).

11.    Here, the Settlement is procedurally fair because it was reached through arm's-length negotiations and after experienced counsel had thoroughly evaluated the merits of Plaintiff's claims.  Indeed, the Parties engaged in more than sufficient discovery to explore the claims and defenses at issue in the case.

12.    Discovery in this action was fulsome, with Defendant having produced (and Class Counsel having reviewed) approximately 80,000 pages of documents.  Defendant's production included relevant time and payroll records, emails, and documents setting forth Defendant's time and pay practices and policies. Additionally, Defendant took the deposition of 24 witnesses, including Onate, and Plaintiff took the deposition of seven witnesses (including BKD's corporate representative).  Plaintiff also served on BKD a subpoena for documents, which resulted in the production of approximately 9,000 additional pages of discovery.  The Parties also served a significant number of interrogatories in the action, with Defendant having served, and Plaintiff and opt-in plaintiffs having responded to, over 1,550 interrogatories.  After substantial discovery was complete, Class Counsel utilized the records Defendant produced, and in conjunction with

EmployStats, developed a comprehensive damage analysis to aid Class Counsel in settlement negotiations.

13.    Additionally, the Class Representative and Class Counsel adequately represented the Class. *See* FED. R. CIV. P. 23(e)(2)(A). The Class Representative's interests are adequately aligned with the Class Members, all of whom assert the same claims and seek the same relief. Moreover, Class Counsel, M&S, is sufficiently experienced and qualified to represent the Class, having been appointed as Class Counsel in numerous other similar wage-and-hour class actions. As such, the Settlement is procedurally fair.

14.    In *Grinnell*, the Second Circuit provided the analytical framework for evaluating the substantive fairness of a class action settlement, identifying the following factors for the Court to consider: (i) the complexity, expense, and likely duration of the litigation; (ii) the reaction of the Class to the Settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) Defendant's ability to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. Each of these factors either weighs in favor of approval of the Settlement or is neutral. Further, the substantive fairness considerations under Rule 23(e)(2) largely overlap the *Grinnell* factors, but the additional consideration under the rule that class members be treated equitably relative to each other also weighs in favor of approval.

15.    First, the continuation of the litigation would have been complex, expensive, and lengthy. At the time the parties reached the Settlement, after approximately 4 ½ years of hard fought litigation, Defendant disputed the viability of Plaintiff's claims, moved for summary

judgment, moved judgment on the pleadings as to Plaintiff's claims under NYLL §§ 195(1) and 195(3), moved to exclude Plaintiff's expert's testimony, and indicated an intent to move to decertify the conditionally certified collective and certified classes, all before proceeding to a fact-intensive trial. Significant additional briefing and argument would have been required to respond to Defendant's arguments and a fact-intensive trial necessary to establish liability. Any judgment would likely be appealed, further extending the litigation. This Settlement, on the other hand, provides significant relief to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs heavily in favor of approval. *See Guerrero v. Montefiore Health Sys. Inc.*, 2025 U.S. Dist. LEXIS 8020, at *21 (S.D.N.Y. Jan. 15, 2025).

16.    Second, the reaction of the Class has been very positive. Only one Class Member out of 8,812 members submitted a timely and valid objection to the Settlement. Specifically, this individual objected to the Settlement on the basis that: (i) Onate "should be awarded at least 5 times more than" the service award being requested; (ii) the $5.15 million settlement does not fully compensate the Class for the "underpaid amounts"; and (iii) Class Counsel's requested fee award of one-third of the Gross Settlement Amount "seems very not fair." Having considered the objections raised, the Court finds that they do not warrant denial of final approval of the Settlement or Class Counsel's request for attorneys' fees. First, the service award being requested is consistent with applicable law in this Circuit. *See Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, *40-42 (S.D.N.Y. Apr. 20, 2012). Second, the Gross Settlement Amount represents a substantial portion of the alleged unpaid compensation. Had the litigation proceeded and had Defendant been successful in decertifying the class or obtaining a favorable determination on liability, the Class Members would have possibly received nothing at all or substantially less than what they are receiving pursuant to the Settlement. Third, the attorneys' fees requested are

consistent with the overwhelming authority in this District and Circuit approving one-third of the settlement amount as fair and reasonable in class action lawsuits such as this. *See Azogue v. 16 for 8 Hosp. LLC*, 2016 U.S. Dist. LEXIS 111134, at *17 (S.D.N.Y. Aug. 19, 2016).

17.    Ultimately, "the fact that the vast majority of the class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 302 (E.D.N.Y. 2015); *see also Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 433 (S.D.N.Y. 2007) (holding that lack of class member objections supported finding that settlement was fair, reasonable and adequate).

18.    Third, discovery has advanced far enough to allow the parties to resolve the case. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000). As discussed above, there can be no doubt that the parties completed more than enough discovery to resolve the case.  At the time the Parties entered into the Settlement, Defendant had produced over 80,000 pages of documents, Defendant deposed 24 plaintiffs, Plaintiff deposed seven of Defendant's witnesses and one non-party witness (BKD's corporate representative), and Plaintiff responded to over 1,550 interrogatories.  Accordingly, the third *Grinnell* factor favors final approval. *See Sewell*, 2012 U.S. Dist. LEXIS 53556 at *21.

19.    Fourth, and fifth, Plaintiff would have faced substantial risks if the case proceeded, including the risk of decertification, judgment on the pleadings as to Plaintiff's claims under NYLL §§ 195(1) and 195(3), exclusion of Plaintiff's expert, and/or a determination by the trier of fact that Plaintiff and the Class were compensated for all hours worked.  As such, this factor weighs heavily in favor of final approval.

20.    Sixth, the risks of not maintaining the collective and the class through trial are also present.  Defendant intended to move for decertification of the collective and the Class on the basis

that Class members were not similarly situated to one another and that individual issues predominated.  Other defendants in similar wage and hour cases have prevailed on arguments like these.  *See, e.g., Myers v. Hertz Corp.*, 624 F.3d 537, 549-551 (2d Cir. 2010) (affirming denial of class certification based on evidence that the class members' duties varied by location).  Thus, there was a legitimate risk that Plaintiff would be unable to maintain the collective and the class through trial.

21.     Seventh, with respect to the ability of AHRC, a not-for-profit entity, to withstand a greater judgment, that factor is neutral and does not preclude the Court from granting final approval, particularly since the Settlement eliminates any risk of collection.

22.     Finally, the Gross Settlement Amount is substantial in light of the best possible recovery and the attendant risks of litigation.  The determination of whether a settlement amount is reasonable "is not susceptible of a mathematical equation yielding a particularized sum." *In re Austrian*, 80 F. Supp. 2d at 178. "Instead, there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005). Ultimately, where a settlement provides "a meaningful benefit to the Class when considered against the obstacles to proving plaintiff's claims with respect to damages in particular, the agreement is reasonable." *Karic v. Major Auto Cos.*, No. 09 CV 5708 (CLP), 2016 U.S. Dist. LEXIS 57782, at *22 (E.D.N.Y. Apr. 27, 2017); *see also Tiro v. Public House Invs., LLC*, 2013 U.S. Dist. LEXIS 129258, at *29-31 (S.D.N.Y. Sept. 10, 2013).

23.     Here, the Gross Settlement Amount of $5.15 million is substantial given the value of the claims and the litigation risks. Class Counsel calculated a range of realistic, potential

recoveries if Class Members were successful on all their claims at trial. In Class Counsel's estimation, the Gross Settlement Amount represents approximately 28% of Class Members' compensatory damages if they were successful on all of their claims at trial, confirming that the Gross Settlement is substantial given the litigation risks.

24.     Rule 23(e) also requires the Court to consider whether the proposed Settlement treats Class Members equitably relative to each other.  *See* FED. R. CIV. P. 23(e)(2)(D).  "As a general rule, the adequacy of an allocation plan turns on . . . whether the proposed apportionment is fair and reasonable' under the particular circumstances of the case." *In re Visa Check/Mastermoney Antitrust Litig.*, 297 F. Supp. 2d 503, 518 (E.D.N.Y. 2003).  Here, the plan of allocation is fair, reasonable, and adequate because each participating class member will receive a pro rata share of the Settlement based on the number of weeks worked during the relevant period compared to the total amount of workweeks attributable to the entire class. The plan of allocation does not treat any Class Member better or worse than any other employee and, instead, is based entirely on objective mathematical calculations derived from time reports and pay records. Accordingly, the plan of allocation is fair and reasonable.  *See, e.g., Kohari v. MetLife Grp., Inc.*, 21-cv-6146 (KHP), 2025 U.S. Dist. LEXIS 7675, at *32 (S.D.N.Y. Jan. 15, 2025).

25.     Based on the foregoing, the Court finds that the Settlement is fair, reasonable, and adequate in all respects and that it is binding on all Class Members.

26.     The Court has reviewed the Releases described in the Agreement, and finds them to be fair, reasonable, and enforceable under the FLSA, Federal Rule 23, and all applicable law.

**C.      The Court Grants Class Counsel Attorneys' Fees Representing One-Third of the Gross Settlement Amount**

27.     The Court hereby grants Class Counsel attorneys' fees of $1,716,666.67 or one-third of the Gross Settlement Amount, which the Court finds to be fair and reasonable.

28.    Although there are two ways to compensate attorneys for successful prosecution of statutory claims—the lodestar method and the percentage of the fund method—courts in this Circuit consistently prefer the percentage of the fund method in common fund wage and hour class action cases like this one. *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *44-45 (S.D.N.Y. July 27, 2007).

29.    In *Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d. Cir. 2000), the Second Circuit articulated six factors for courts to consider in determining the reasonableness of fee applications: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Here, all of the *Goldberger* factors weigh in favor of granting approval of Class Counsel's fee application.

30.    First, Class Counsel expended significant time and labor prosecuting this action, including: Class Counsel performed a variety of tasks that culminated in the creation of the Gross Settlement Fund, including: (i) drafting a comprehensive Complaint; (ii) drafting detailed document demands, interrogatories, and requests for the production of electronically stored information ("ESI"); (iii) negotiating the production of time and payroll records and relevant ESI; (iv) reviewing tens of thousands of pages of responsive documents, including Class Member payroll records; (v) successfully opposing Defendant's efforts to limit the Class and the scope of discovery to Salaried Employees, culminating in an Order from the Court requiring Defendant to produce discovery for Hourly Employees, thereby substantially increasing the scope of the Class; (vi) pursuing and receiving third-party discovery from BKD, ADP, and UTA, including reviewing thousands of pages of documents produced by such third parties; (vii) defending the depositions of Onate and 23 opt-in plaintiffs; (viii) deposing six of Defendant's key witnesses, including

Defendant's expert witness and Chief Financial Officer, as well as deposing BKD's corporate representative; (ix) successfully moving for collective certification pursuant to 29 U.S.C. § 216(b) and class certification pursuant to Rule 23; (x) successfully negotiating the Settlement, and thereafter drafting the Agreement and the motions for preliminary and final approval of the Agreement; (xi) communicating with Class Members regarding the Agreement and their experiences working for Defendant; and (xii) communicating with the Claims Administrator regarding the Notice and a number of administration issues.

31.    In performing these tasks, as of the date of Plaintiff's motion for attorneys' fees, Class Counsel expended over 2,167 hours of professional time for an aggregate lodestar of $1,411,840.00. Moreover, since Plaintiff's motion for attorneys' fees, Class Counsel have expended additional professional time on this matter, and and anticipate spending additional time responding to Class Member inquiries regarding the Settlement and administering the distribution of the Settlement. *See Hanifin v. Accurate Inventory and Calculating Service, Inc.*, No. 11 Civ. 1510 (MAD) (ATB), 2014 U.S. Dist. LEXIS 115710, at *21 (N.D.N.Y. Aug. 20, 2014) ("In wage and hour cases, Class Counsel is often called upon to perform work after the final approval hearing, including answering class member questions, answering questions from the claims administrator, and negotiating and possibly litigating disagreements with defendants about administering the settlement and distributing the fund."); *see also Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, *19 (S.D.N.Y. Aug. 6, 2010) ("because class counsel will be required to spend significant additional time on this litigation in connection with implementing and monitoring the settlement, the multiplier will actually be significantly lower.").

32.    Second, the size and difficulty of the issues in this case support approval of the requested fees. This case involved a myriad of complex factual and legal issues that required

significant briefing and legal analysis, including, among other things, whether the proposed class included Hourly Employees in addition to Salaried Employees, and the admissibility of BKD's preliminary audit report. Perhaps the most complex and contested issue in the case concerned the certifiability of Plaintiff's claims. Throughout the litigation, Defendant maintained that Plaintiff's claims were inappropriate for class treatment, arguing that individualized issues predominated over common issues, including that Class Members performed their duties differently depending on their job title and responsibilities and where they worked. Although Plaintiff was successful in obtaining collective and class certification, Defendant represented that it intended to move to decertify the collective and certified class, which presented considerable risks to Plaintiff and the Class.

33.     Third, the risks of litigation were significant and also favor approval of Class Counsel's fee application. Although Plaintiff was successful in obtaining collective certification and class certification, Defendant would likely move for decertification. As such, there was a risk that the Court would determine that Class Members performed their duties differently depending on where they worked, who supervised them, and other factors, and that these differences precluded class certification. Additionally, at the time the Settlement was reached, Defendant had filed a motion for judgment on the pleadings with respect to Plaintiff's claims for Defendant's alleged violations of NYLL §§ 195(1) and 195(3), which, if granted, would have significantly reduced the total possible damages Plaintiff could have obtained on behalf of the Class at trial. Likewise, at the time the Settlement was reached, Defendant had filed a motion to exclude Plaintiff's expert testimony, which, if granted, would have made it extremely difficult, if not impossible, for Plaintiff to establish class-wide damages at trial. Had the case ultimately proceeded to trial, Plaintiff may have been unable to prove all the necessary elements of his claims,

including that Defendant's management knew or should have known that Class Members were performing work before and/or after the end of their scheduled shifts or during meal breaks. Accordingly, the risk of litigation weighs heavily in favor of Class Counsel's request for attorneys' fees.

34.     Fourth, the quality of the representation of Class Counsel favors approval of the requested fees. Class Counsel aggressively litigated this lawsuit from its commencement, including successfully moving for conditional certification and class certification, prevailing on a number of discovery related motions, defeating a number of Defendant's discovery related motions, all of which culminated in the Settlement. Viewed in the context of the recovery achieved, the $5.15 million Gross Settlement Amount represents a significant portion of all Class Members' possible compensatory damages if they were successful on all their claims at trial. Class Counsel's experience also weighs in favor of approving their requested fee. Class Counsel has substantial experience prosecuting large-scale class and wage and hour actions such as this and their skill and experience directly brought about the favorable settlement.

35.     Fifth, the one-third fee request is reasonable and consistent with the norms of class litigation in this circuit. In fact, this Court routinely grants requests of one-third of settlement funds in class actions such as this. *See Azogue v. 16 for 8 Hosp. LLC*, 2016 U.S. Dist. LEXIS 111134, at *17 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one-third of the Fund is reasonable and consistent with the norms of class litigation in this circuit."); *Yuzary v. HSBC Bank USA, N.A.*, 2013 U.S. Dist. LEXIS 144327, at *26 (S.D.N.Y. Oct. 2, 2013); *Clark v. Ecolab, Inc.*, 2010 U.S. Dist. LEXIS 47036, at *27-28 (S.D.N.Y. May 11, 2010) (awarding 33% of $6 million settlement fund in FLSA wage and hour case).

36. Moreover, on a cross-check basis, the attorneys' fees sought are approximately 1.2 times the lodestar of Class Counsel, which is well within the range of reasonableness and in line with other awards of attorneys' fees in wage and hour class actions such as this. *See Yuzary*, 2013 U.S. Dist. LEXIS 144327 *27-29 (approving 7.6 multiple in $15.625 million wage and hour settlement); *Sewell*, 2012 U.S. Dist. LEXIS 53556 at *38 ("Courts commonly award lodestar multipliers between two and six").

37. Accordingly, Class Counsel attorneys' fees of $1,716,666.67 or one-third of the Gross Settlement Amount is fair and reasonable.

### D.   The Court Approves Class Counsel's Request for Reimbursement of Expenses

38. The Court hereby approves Class Counsel's request for reimbursement of litigation expenses in the sum of $216,727.87, which expenses the Court finds were necessarily and reasonably incurred by Class Counsel in prosecuting this case.

39. Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were "incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y. 2003) (quoting *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993)).

40. Here, Class Counsel's unreimbursed expenses over the course of the litigation were necessary to prosecute Plaintiff's claims. A substantial portion of the expenses (totaling $56,420.42) were associated with the expert fees of EmployStats. In addition, M&S incurred substantial expenses (totaling $56,475.80) for the use of two outside independent contract attorneys, who were instrumental in reviewing documents and contacting opt-in plaintiffs concerning the opt-in process after collective certification. Numerous courts in this District

recognize that such expenses are recoverable as reasonable and justified expenses incurred in the ordinary course of prosecution of Plaintiffs' claims.  *See, e.g.*, *Dial Corp. v. News Corp.*, 317 F.R.D. 426, 438 (S.D.N.Y. 2016) (approving request by plaintiffs' counsel for reimbursement of expenses incurred by contract attorneys who reviewed "millions of documents," and expressing "appreciate[ion] [for] Counsel's decision to treat these contractor fees as an expense."); *Meredith Corp. v. SESAC, LLC*, 87 F.Supp.3d 650, 671 (S.D.N.Y. 2015) (approving request by plaintiffs' counsel for reimbursement of contract attorney expenses as "reasonable and justified").  The deposition costs (totaling $13,155.76) were also substantial, as were the mediation costs (totaling $11,575.00), and the expenses associated with the class notice (totaling $16,451.37).  These expenses, as well as the remainder of Class Counsel's expenses, were necessarily incurred expenses during the litigation.  As such, Class Counsel's request for reimbursement of these expenses from the Gross Settlement Amount is approved.

### E.    The Court Approves Analytics' Fees

41.    The Court hereby approves and awards fees and costs to Analytics LLC in the amount of $55,906.83 to be paid from the Gross Settlement in accordance with the Agreement and as set forth herein.

42.    Analytics was appointed to administer the Settlement in accordance with the terms of the Agreement, including, among other things, disseminating notice of the Settlement to the Class, answering questions from Class Members, and establishing a dedicated settlement website. Analytics will continue to fulfill its duties to facilitate the Settlement after entry of this Judgment, including calculating the individual Class Member's allocated amount, and distributing the funds by mailing checks.

43.     The Court finds that the requested administration fee is reasonable in light of the tasks completed by Analytics and the tasks to be completed in the distribution of funds to Class Members.

**F.     The Court Approves the Requested Service Award**

44.     The Court hereby approves a service award of $10,000 to Onate based upon the time, effort, and commitment he expended in prosecuting the case on behalf of the Class.

45.     Courts acknowledge that service awards are common in class action cases.  *See Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, *7 (S.D.N.Y. June 22, 2007) Service awards are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015). In assessing the reasonableness of service awards, courts consider the risks the class representatives assume in serving the interests of the class. *See Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, 2010 U.S. Dist. LEXIS 12762, *4 (S.D.N.Y. Feb. 9, 2010).

46.     Here, Onate was instrumental in the success of the case.  He was the spearhead behind the lawsuit, providing the details of his work experiences in connection with the drafting of the Complaint, and assumed significant risk as a result of lending his name to the lawsuit, including the prospects of future employment.  Moreover, Onate was in constant communication with Class Counsel from the beginning of the case until its conclusion, actively participated in discovery, including sitting for a deposition, and submitted declarations in support of Plaintiff's motions for conditional certification and class certification.  His contributions to the litigation directly contributed to the successful resolution of the disputed claims.

47.     Accordingly, the requested service award is reasonable and appropriate to compensate Onate for the work he performed and the risks he undertook in this litigation and helping achieve a successful resolution.  *See, e.g.*, *Millker v. City of New York*, No. 21-cv-2616 (PKC) (JW), 2024 U.S. Dist. LEXIS 232257, at \*12 (S.D.N.Y. Dec. 19, 2024) (approving service awards of $20,000 to each of the class representatives); *Bekker v. Neuberger Berman group 401k Plan Inv. Comm.*, 504 F. Supp. 3d 265, 272 (S.D.N.Y. 2020) (approving service award of $20,000).

**G.    Settlement Administration**

48.     Within 30 days after the Court issues this Order, the Analytics will mail the Settlement Checks and Service Awards ("Mailing Date").

49.     Within 10 calendar days after the Court issues this Order, Analytics will mail or wire to Class Counsel its Court-approved attorneys' fees and costs.

50.     Within 90 days after the Mailing Date, Class Members must endorse or deposit their Settlement Checks ("Acceptance Period"). Within 90 days after the end of the Acceptance Period, the amount of the uncashed Settlement Checks will be deposited into the Reserve Fund maintained by Analytics.

51.     One-half of the amount remaining in the Reserve Fund after 180 days from the end of the Acceptance Period will be refunded to Defendant, and the other one-half will be distributed to The Doe Fund, a non-profit organization that provides paid transitional work, housing, and educational opportunities to people with histories of homelessness, incarceration, and substance abuse.  The Court finds that The Doe Fund is an appropriate *cy pres* organization as mission is related to the purpose of the lawsuit.  *See Reyes v. Buddha-Bar NYC*, 2010 U.S. Dist. LEXIS 62591, at \*2 (S.D.N.Y. June 22, 2010).

52.     The Complaint filed in this Litigation and all claims contained therein are dismissed in their entirety with prejudice and without attorneys' fees or costs as to all Class Members.

53.     By operation of the entry of this Order and the Final Judgment, all Released Claims are fully, finally and forever released, relinquished and discharged pursuant to the terms of the release set forth in the Agreement as to all Class Members.

54.     The Parties entered into the Agreement solely for the purpose of compromising and settling disputed claims. Defendant in no way admits any violation of law or any liability whatsoever to Plaintiff and the Classes, individually or collectively, all such liability being expressly denied by Defendant.

55.     This Final Judgment is a final judgment in the Litigation as to all claims among the Plaintiff, the Class Members, and Defendant.  The Court finds, for purposes of Federal Rule 54(b), that there is no just reason for delay and expressly directs entry of Judgment as set forth herein.

56.     The Court retains jurisdiction over this matter for purposes of resolving issues relating to administration, implementation, and enforcement of the Agreement.


IT IS SO ORDERED.

DATED: _____          _____
                                Hon. Jennifer E. Willis
                                United States Magistrate Judge